**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
―――――――――――

No. 17-2720
―――――――――――

UNITED STATES OF AMERICA,
                                        Appellant

v.

JUAN H. RAMOS
―――――――――――

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-08-cr-00695-001)
District Judge: Honorable Michael M. Baylson
―――――――――――

Argued on May 15, 2018

Before: SMITH, <u>Chief Judge</u>, HARDIMAN and ROTH,
<u>Circuit Judges</u>

(Opinion filed:  June 15, 2018)

Louis D. Lappen
  Acting United States Attorney
Robert A. Zauzmer  [ARGUED]
  Assistant United States of Attorney
  Chief of Appeals
Bernadette A. McKeon
Jeffery W. Whitt
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
  *Counsel for Appellant*

Leigh M. Skipper
  Chief Federal Defender
Brett Sweitzer
  Chief of Appeals
Alexander C. Blumenthal
  Assistant Federal Defender
Arianna J. Freeman  [ARGUED]
Andrew J. Dalack
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
  *Counsel for Appellee*

———————

OPINION

———————

ROTH, Circuit Judge

## INTRODUCTION

The government appeals the District Court's determination at sentencing that Juan Ramos is not a "career offender" under Section 4B1.1 of the U.S. Sentencing Guidelines. That determination was based on the conclusion that Ramos's prior state court conviction for aggravated assault is not a predicate "crime of violence," as that term is defined in the Guidelines. We disagree with that conclusion. Applying the modified categorical approach to Pennsylvania's divisible aggravated assault statute, we hold that Ramos's prior conviction for second-degree aggravated assault with a deadly weapon, in violation of 18 Pa. C.S. § 2702(a)(4), is categorically a crime of violence. Because the District Court did not designate Ramos a career offender for sentencing purposes, we will vacate the judgment of sentence and remand for resentencing.

## BACKGROUND

Ramos's status as a career offender is dictated by his criminal record, which includes several prior felony convictions. First, in July 1998, Ramos "threw a brick at the nose of a 10-year-old child," who then required medical treatment at a local hospital.[1] As a result, Ramos pled guilty

---

[1] 2010 Presentence Investigation Report (PSR) & 2017 PSR ¶ 40. Although we set out Ramos's prior offense conduct by way of background, the categorical approach requires courts to ignore an offender's conduct and analyze only the elements of the statute of conviction. *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2245, 2253 (2016).

to aggravated assault in the Philadelphia County Common Pleas Court.[2] Second, in October 1999, Ramos was apprehended with 2.76 grams of heroin and subsequently convicted in state court for manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance, and knowingly possessing a controlled substance.[3] And third, in August 2001, Ramos broke into a furniture store and stole "several futons"; he later pled guilty to burglary in state court.[4]

The instant offense conduct occurred in January 2008, when Philadelphia police officers observed Ramos selling crack cocaine out of a truck.[5] The police arrested Ramos and recovered a loaded handgun from the vehicle. A federal grand jury indicted Ramos for various drug and weapons offenses in November 2008.[6] One year later, Ramos pled

---

[2] 2010 PSR & 2017 PSR ¶ 38. As discussed below, the bill of information and plea documents, which we can consider *only* if we apply the modified categorical approach, establish that Ramos pled guilty to second-degree aggravated assault with a deadly weapon, in violation of 18 Pa. C.S. § 2702(a)(4). *See* Supp. App. 6-7.

[3] 2010 PSR & 2017 PSR ¶¶ 41-42.

[4] 2010 PSR & 2017 PSR ¶¶ 43, 45.

[5] 2010 PSR & 2017 PSR ¶¶ 12-15.

[6] Ramos was charged with: (i) possession with intent to distribute cocaine base and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; (ii) possession of a firearm in furtherance of a drug-trafficking crime and aiding and abetting, in violation of 18 U.S.C. §§ 924(c), (2); and (iii) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *See* 2010 PSR &

4

guilty to each of the charged offenses, stipulating in his plea agreement that he was a career offender.[7]

At sentencing, the District Court concluded that Ramos had three predicate drug or violent felony convictions under the Armed Career Criminal Act (ACCA)—the three state court convictions set out above—and was thus subject to a 15-year mandatory minimum sentence. Factoring in Ramos's acceptance of responsibility, the District Court determined that Ramos's effective Guidelines range was 248-to-295 months' imprisonment—*i.e.*, an advisory Guidelines range of 188-to-235 months' imprisonment combined with a mandatory, consecutive 60-month sentence under 18 U.S.C. § 924(c).[8] After granting the government's motion for a downward departure, the court sentenced Ramos to a 180-month term of imprisonment.

In May 2016, Ramos sought post-conviction relief pursuant to 28 U.S.C. § 2255, arguing that, under *Johnson v. United States* (*Johnson II*),[9] his prior burglary conviction was no longer a career offender predicate and, therefore, his career-offender designation and sentence were invalid. Both

---

2017 PSR ¶ 1. In addition, the government filed an information pursuant to 21 U.S.C. § 851, charging Ramos with a Notice of Prior Conviction. *See* 2010 PSR & 2017 PSR ¶ 2.

[7] *See* 2010 PSR ¶¶ 1-6, 22-31.

[8] These figures were based on a determination that Ramos's Total Offense Level was a 31 and that he was a career offender with a Category VI criminal history. 2010 PSR ¶¶ 22-31, 67-70.

[9] 135 S. Ct. 2551, 2563 (2015) (striking down the "residual clause" of the ACCA as unconstitutionally vague).

the government and the District Court agreed that Ramos's sentence was invalid under *Johnson II*.[10] Accordingly, the District Court vacated Ramos's sentence and held a resentencing hearing in July 2017.

Although the government conceded that Ramos was not a career offender *under the ACCA*, it nonetheless took the position at resentencing that Ramos remained a career offender *under the Guidelines*—which require only *two* predicate drug or violent felony convictions, as opposed to the *three* convictions required by the ACCA.[11] The government thus recommended that the court again impose a 180-month sentence. Ramos countered that he was not a career offender under the Guidelines because his prior aggravated assault conviction was not a predicate crime of violence. Proceeding from that premise, Ramos contended that his effective Guidelines range was 97-to-106 months' imprisonment.[12] The District Court adopted Ramos's proposed Guidelines calculation, ruling from the bench that Ramos was not a career offender because there was doubt as to whether aggravated assault under Pennsylvania law qualifies as a crime of violence.[13] Having concluded that Ramos was not a career offender, the District Court sentenced Ramos to a 105-month term of imprisonment—more than six

---

[10] Dist. Ct. Dkt. No. 56 (granting joint motion for § 2255 relief).

[11] *Compare* U.S.S.G. § 4B1.1(a), *with* 18 U.S.C. § 924(e).

[12] This calculation was based on a determination that, after excluding the ACCA enhancement or any consideration of his prior aggravated assault conviction, Ramos had a Total Offense Level of 17 and a Category IV criminal history.

[13] App. 60-61 (transcript of resentencing).

years less than his initial sentence and the sentence recommended by the government.

In September 2017, the government appealed the District Court's conclusion that Ramos was not a career offender under the Guidelines. Several days after the government filed its opening brief, the District Court issued a memorandum, reiterating its position that Ramos was not a career offender on the ground that his aggravated assault conviction was not a crime of violence, but disavowing its earlier rationale for that conclusion.[14]

## DISCUSSION[15]

The sole issue we must resolve on appeal is whether Ramos is a career offender under Section 4B1.1 of the Guidelines. Ramos argues that he is not a career offender—a designation that applies only to defendants with at least two predicate drug or violent felony convictions[16]—because only one of his prior felony convictions (*i.e.*, his 1999 drug

---

[14] Supp. App. 1-5 ("The Court acknowledges that it erred in relying on the rule of lenity . . ..").

[15] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742(b)(2) and 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal determination that Ramos is not a career offender. *United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017).

[16] *See* U.S.S.G. § 4B1.1(a).

conviction) qualifies as a career offender predicate.[17] According to Ramos, his 1998 aggravated assault conviction cannot qualify as a career offender predicate since it is not a "crime of violence" within the meaning of the Guidelines. The government, by contrast, argues that Ramos is a career offender because his aggravated assault conviction was for a crime of violence. To resolve this appeal, we must determine whether Ramos's 1998 aggravated assault conviction qualifies as a predicate crime of violence under the Guidelines.

## I. Legal Framework: Career Offender Status, Crimes of Violence, and the Categorical and Modified Categorical Approaches

### A. *The Career Offender and Crime of Violence Provisions of the Guidelines*

Under the Guidelines, a defendant is designated a "career offender" and thus subject to enhanced sentencing exposure if, as relevant here, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."[18] Because the parties agree that Ramos's 1999 drug conviction is a predicate controlled substance offense, Ramos is a career offender so long as his prior aggravated assault conviction is a predicate crime of violence.

---

[17] It is undisputed that Ramos's 1999 state court drug conviction qualifies as a career offender predicate "controlled substance offense." *See* U.S.S.G. § 4B1.2(b).

[18] U.S.S.G. § 4B1.1(a); *see United States v. Graves*, 877 F.3d 494, 501 (3d Cir. 2017).

Section 4B1.2 of the Guidelines sets out two separate definitions of the term "crime of violence." Any federal or state offense, punishable by a term of imprisonment exceeding one year, is a crime of violence if the offense:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).[19]

The first definition is known as the "elements clause," and the second definition is known as the "enumerated offenses clause."[20]

*B.     The Categorical and Modified Categorical Approaches*

To determine whether a prior conviction qualifies as a predicate crime of violence, courts use the categorical approach or, when applicable, the modified categorical approach. Both approaches require us to "compare the

---

[19] U.S.S.G. § 4B1.2(a).

[20] *See United States v. Wilson*, 880 F.3d 80, 84 (3d Cir. 2018). Because we hold that Ramos's aggravated assault conviction is a crime of violence under the elements clause, we do not address the enumerated offenses clause.

elements of the statute under which the defendant was convicted to the [G]uidelines' definition of crime of violence."[21]  When conducting that analysis under the elements clause, as here, we ask whether the use, attempted use, or threatened use of physical force against another person is categorically an element of the offense of conviction.[22]  If the statute forming the basis of the defendant's conviction necessarily has such an element, then the statute proscribes a predicate crime of violence within the meaning of the Guidelines.[23]  But if the statute of conviction lacks such an element, it "sweeps more broadly" than the Guidelines' definition, and a prior conviction under the statute cannot serve as a career offender predicate—even if the defendant actually committed the offense by using, attempting to use, or threatening to use physical force against another person.[24]

It may appear counterintuitive that a defendant who actually uses physical force against another person when committing a felony does not, by definition, commit a violent

---

[21] *Wilson*, 880 F.3d at 83 (internal quotation marks omitted); *Chapman*, 866 F.3d at 133 (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)); *see United States v. Robinson*, 844 F.3d 137, 141 (3d Cir. 2016) (explaining the various rationales for the categorical approach).

[22] U.S.S.G. § 4B1.2(a)(1); *see Chapman*, 866 F.3d at 134 (quoting *United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014)); *see also United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014).

[23] *Chapman*, 866 F.3d at 134.

[24] *Brown*, 765 F.3d at 189 (citing *Descamps*, 570 U.S. at 261); *Chapman*, 866 F.3d at 134; *see Mathis*, 136 S. Ct. at 2251-52.

10

crime under the elements clause. But that outcome is dictated by the categorical approach, which is concerned only with the elements of the statute of conviction, not the specific offense conduct of an offender.[25] In fact, the categorical approach requires courts not only to ignore the actual manner in which the defendant committed the prior offense, but also to presume that the defendant did so by engaging in no more than "the minimum conduct criminalized by the state statute."[26] This academic focus on a hypothetical offender's hypothetical conduct is not, however, an "invitation to apply legal imagination" to the statute of conviction.[27] Rather, there must be legal authority establishing that there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct" falling outside of the Guidelines' definition of a crime of violence.[28]

This elements-only analysis is confined to the statute of conviction. If, however, that statute is "divisible," a court may resort to the "modified categorical approach."[29] Serving as a tool that "merely helps implement the categorical approach," the modified categorical approach allows a court

---

[25] *Mathis*, 136 S. Ct. at 2251-52; *Taylor v. United States*, 495 U.S. 575, 600 (1990).

[26] *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013); *see Mathis*, 136 S. Ct. at 2253 (explaining that the categorical approach "treats such facts as irrelevant").

[27] *Moncrieffe*, 569 U.S. at 191 (internal quotation marks omitted).

[28] *See id.*

[29] *Descamps*, 570 U.S. at 257, 262 (explaining that a statute is divisible if it "comprises multiple, alternative versions of the crime").

to look beyond the statute of conviction for a limited purpose, but "is not meant to supplement the categorical approach."[30] In the case of a "divisible" statute, the court may consult a specific set of extra-statutory documents to identify the specific statutory offense that provided the basis for the prior conviction. These materials include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."[31] This approach permits the court to assess whether that offense categorically qualifies as a crime of violence.[32] While the modified categorical approach allows courts to look beyond the text of a divisible statute for that limited purpose, it does not permit courts to scour the record to ascertain the factual conduct giving rise to the prior conviction.[33]

## II. Ramos Is a Career Offender Because His Aggravated Assault Conviction Is Categorically a Crime of Violence Under the Guidelines

In light of the foregoing legal framework, we can resolve whether Ramos is a career offender by answering three questions. Is Pennsylvania's aggravated assault statute divisible? If so, does the limited set of extra-statutory materials that we may consult under the modified categorical

---

[30] *Robinson*, 844 F.3d at 143 (internal quotation marks omitted).

[31] *Brown*, 765 F.3d at 189-90 (quoting *Taylor*, 495 U.S. at 602; *Shepard v. United States*, 544 U.S. 13, 16 (2005)).

[32] *Descamps*, 570 U.S. at 263-64; *see Mathis*, 136 S. Ct. at 2256.

[33] *Mathis*, 136 S. Ct. at 2253-54.

12

approach establish with certainty which subsection of Pennsylvania's aggravated assault statute provided the basis for Ramos's conviction? And, if so, does that specific aggravated assault offense categorically qualify as a predicate crime of violence under the Guidelines? Because we answer each of those questions in the affirmative, we conclude that Ramos is a career offender.

A. *Pennsylvania's Aggravated Assault Statute Is Divisible*

The presentence investigation reports (PSRs) state that, in 1998, Ramos pled guilty in Pennsylvania court to aggravated assault, without specifying the aggravated assault offense that he committed.[34] Accordingly, we must begin our categorical analysis by examining the text of Pennsylvania's aggravated assault statute, 18 Pa. C.S. § 2702, which at the time of Ramos's guilty plea provided as follows:

(a) Offense defined.—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers agents, employees or other persons enumerated in subsection (c) [listing twenty-six protected classes of individuals, including police

---

[34] 2010 PSR & 2017 PSR ¶ 38.

13

officers, firefighters, judges, prosecutors, and other public officials], or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty.

(3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty;

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member, or other employee or student of [various educational institutions]; or

(6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury.[35]

---

[35] 18 Pa. C.S. § 2702(a)(1)-(6) (1998); *see id.* § 2301 (defining "Deadly weapon," "Bodily injury," and "Serious bodily injury"); *see also id.* § 901(a) (defining "attempt"). Because, "[u]nder the categorical approach, we look to the elements of the statute as it existed at the time of the prior conviction," *United States v. Dahl*, 833 F.3d 345, 355 (3d Cir.

Under the statute's grading provision, 18 Pa. C.S. § 2702(b), convictions under subsections (a)(1) and (a)(2) are classified as first-degree felonies, while convictions under subsections (a)(3) through (a)(6) are second-degree felonies. Offenders convicted of first-degree aggravated assault are subject to lengthier maximum sentences than their counterparts convicted of second-degree aggravated assault.[36]

The PSRs setting out Ramos's criminal history state only that he pled guilty to aggravated assault and therefore do not enable us to discern the specific subsection of § 2702(a) providing the basis for his guilty plea. If Pennsylvania's aggravated assault statute is divisible, however, we may apply the modified categorical approach to fill that gap in the record.[37]

A determination of a statute's divisibility turns on the distinction between "means" and "elements." Elements are the constituent parts of a criminal offense that a jury must find beyond a reasonable doubt to convict; or, alternatively, that a defendant necessarily admits when pleading guilty.[38] Means, on the other hand, are merely the factual ways that a criminal offense can be committed; they are "extraneous to

---

2016), we confine our analysis to the version of the statute in effect in 1998.

[36] 18 Pa. C.S. § 1103(1)-(2) (allowing courts to sentence an offender convicted of a first-degree felony to "not more than 20 years," and an offender convicted of a second-degree felony to "not more than ten years").

[37] *See, e.g.*, *Brown*, 765 F.3d at 191.

[38] *Mathis*, 136 S. Ct. at 2248, 2256; *see Descamps*, 570 U.S. at 261-62.

15

the crime's legal requirements" and thus "need neither be found by a jury nor admitted by a defendant."[39] A divisible statute sets out one or more *elements* in the alternative, most often using disjunctive language to list multiple, alternative criminal offenses.[40] Each alternative offense listed in a divisible statute must be proven beyond a reasonable doubt to sustain a conviction. An indivisible statute, by comparison, sets forth a single set of elements that define a single crime, regardless of whether the statute lists separate factual *means* of satisfying a particular element.[41] The modified categorical approach applies only to divisible statutes.

Pennsylvania's aggravated assault statute, 18 Pa. C.S. § 2702, is divisible in two different ways. For one, the statute proscribes two alternative degrees of aggravated assault, which are subject to different maximum sentences.[42] The Supreme Court has held that where "statutory alternatives carry different punishments then, under *Apprendi*, they must be elements" (*i.e.*, separate, divisible offenses), not means.[43] That is because any fact that increases the penalty for a crime (other than the fact of a prior conviction) must be submitted to a jury.[44] Pennsylvania's aggravated assault statute sets out divisible forms of aggravated assault: first- and second-

---

[39] *Mathis*, 136 S. Ct. at 2248.

[40] *Descamps*, 570 U.S. at 262.

[41] *Mathis*, 136 S. Ct. at 2248-49.

[42] 18 Pa. C.S. §§ 1103(1)-(2), 2702(b).

[43] *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

[44] *Apprendi*, 530 U.S. at 490.

degree aggravated assault.[45]   Moreover, the statute is further divisible into four, alternative second-degree aggravated assault offenses.   Using disjunctive language, the statute lists alternative "elements"—subsections (a)(3), (4), (5), and (6)—not merely alternative factual means by which an offender can commit the single, overarching crime of second-degree aggravated assault.[46]   Put differently, each subsection of § 2702(a) criminalizes different conduct and sets forth different

---

[45] The parties skip this initial step in the divisibility analysis.   They overlook the first-degree provisions of the statute entirely and ask us to assume that Ramos was convicted of *second-degree* aggravated assault—even though the PSRs stated only that Ramos was convicted of "aggravated assault."   2010 PSR & 2017 PSR ¶ 38.   From the PSRs, we have no way of knowing whether Ramos was convicted of first- or second-degree aggravated assault unless we examine the bill of information and plea document, which we can do *only if* the statute is divisible.   By skipping this step, the parties overlook that the modified categorical approach applies here.

The fact that the aggravated assault statute is divisible into first- and second-degree offenses alone would permit us to review the bill of information and plea document to determine the specific subsection of § 2702(a) to which Ramos pled guilty.   *See United States v. Blair*, 734 F.3d 218, 225-26 (3d Cir. 2013); *see also Brown*, 765 F.3d at 196.

[46] *See, e.g.*, *Brown*, 765 F.3d at 192 (holding that Pennsylvania's similarly disjunctive terroristic threats statute, 18 Pa. C.S. § 2706(a), is divisible).

17

(albeit overlapping) elements that must be proven beyond a reasonable doubt.[47]

Ramos resists the application of the modified categorical approach by citing two non-precedential state court decisions, *Commonwealth v. Cassell*[48] and *Commonwealth v. Moore*.[49]  Ramos argues that these cases stand for the proposition that § 2702(a) lists indivisible means, not elements, because juries in Pennsylvania do not need to agree unanimously on which subsection of the second-degree aggravated assault statute has been violated. We are not persuaded that these cases "definitively" answer the question of divisibility.[50, 51]  To the contrary, various

---

[47] *See* PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS §§ 15.2702A-15.2702L (Pa. Bar. Inst., 3d ed. 2016) (listing the elements of each of the separate offenses listed in § 2702(a) and instructing that the jury "must find that each of [those] elements has been proven beyond a reasonable doubt").

[48] No. 1300 EDA 2015, 2016 WL 6135379 (Pa. Super. Oct. 21, 2016).

[49] No. 1247 EDA 2013, 2015 WL 7078781 (Pa. Super. June 4, 2015).

[50] These cases stand only for the long-standing rule that Pennsylvania courts will not overturn a guilty verdict based on a flawed (or imprecise) criminal information that nonetheless provided the defendant with sufficient notice of the nature of the charges.  *See, e.g.*, *Commonwealth v. Jones*, 912 A.3d 268, 289 (Pa. 2006).  Neither decision can be read as tacit approval of the imprecision in the underlying charging documents.

Pennsylvania authorities establish that § 2702(a) lists divisible aggravated assault offenses in the alternative, not merely alternative means of committing aggravated assault.[52]

We conclude that § 2702(a) is divisible. Thus, we will apply the modified categorical approach.

> **B.** **Ramos Pled Guilty to Second-Degree Aggravated Assault with a Deadly Weapon, in Violation of 18 Pa. C.S. § 2702(a)(4)**

The defining feature of the modified categorical approach is that it allows courts to consult certain extra-statutory materials for the limited purpose of identifying the offense of conviction—here, the specific subsection of § 2702(a) that provided the basis for Ramos's guilty plea. These materials must establish the offense of conviction with "certainty."[53]

---

[51] *See United States v. Henderson*, 841 F.3d 623, 628 (3d Cir. 2016).

[52] *See, e.g.*, PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS §§ 15.2702A-15.2702L; *Commonwealth v. Rhoads*, 8 A.3d 912, 918 (Pa. Super. 2010) (concluding that the offenses listed in § 2702(a)(1) and (a)(4) do "*not* share identical statutory elements" because the latter requires proving that the offender caused injury or attempted to cause injury "with a deadly weapon" (citing *Commonwealth v. Ferrari*, 593 A.2d 846, 848-49 (Pa. Super. 1991)); *Commonwealth. v. Taylor*, 500 A.2d 110, 114 (Pa. Super. 1985) ("[T]he proof required for subsection (a)(1) and subsection (a)(4) [of § 2702] is substantially different . . ..").

[53] *Henderson*, 841 F.3d at 631-32 (citing *Mathis*, 136 S. Ct. at 2257).

19

Despite Ramos's efforts to inject ambiguity into the record, the charging and plea documents plainly establish that he pled guilty to second-degree aggravated assault with a deadly weapon, in violation of § 2702(a)(4). The bill of information charges Ramos with two offenses: first-degree aggravated assault, in violation of § 2702(a)(1); and second-degree aggravated assault, in violation of § 2702(a)(4).[54] The information cites these specific subsections of the statute and sets out the charges using the exact language of those provisions. The plea document states, "Guilty as F2," which in widely understood prosecutorial parlance means that Ramos pled guilty to a second-degree felony.[55] Viewing both documents in tandem, then, we are left with only one conclusion: Ramos pled guilty to the only second-degree felony with which he was charged, namely, second-degree aggravated assault with a deadly weapon, in violation of § 2702(a)(4).

> C. *Second-Degree Aggravated Assault with a Deadly Weapon, in Violation of § 2702(a)(4), Is a Crime of Violence Under the Elements Clause*

Having identified the offense of conviction, we examine the elements of that offense to determine whether it categorically qualifies as a predicate crime of violence. We

---

[54] Supp. App. 7. The criminal information further clarifies that the "deadly weapon" used during the commission of the § 2702(a)(4) offense was "a brick." *Id.*

[55] Supp. App. 6; *see generally Commonwealth v. Spruill*, 80 A.3d 453, 455 (Pa. 2013) (explaining that "F1s" are first-degree felonies and "F2s" are second-degree felonies).

20

now hold that a § 2702(a)(4) conviction is categorically a crime of violence under the elements clause of the Guidelines.

The elements clause defines the term "crime of violence" to encompass any state offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another."[56] The phrase "physical force," according to the Supreme Court, "refers to force exerted by and through concrete bodies" that is "capable of causing physical pain or injury to another person."[57] Accordingly, a crime is a violent one under the elements clause so long as it has an element that can be satisfied only through the use, threatened use, or attempted use of force against another person that is capable of causing that person physical pain or injury.[58] That remains true regardless of whether an offender could be convicted under the statute for applying force directly (*e.g.*, hitting a victim with a bat) or applying force indirectly (*e.g.*, throwing a brick at a victim).[59]

---

[56] U.S.S.G. § 4B1.2(a)(1). Additionally, any offense must be a felony "punishable by imprisonment for a term exceeding one year" to qualify as a "crime of violence." *Id.* It is undisputed, however, that § 2702(a)(4) is a second-degree felony offense subject to a maximum term of imprisonment of ten years. *See* 18 Pa. C.S. §§ 1103, 2702(b).

[57] *Johnson v. United States (Johnson I)*, 559 U.S. 133, 138-40 (2010); *see Castleman*, 134 S. Ct. at 1410.

[58] *See Johnson I*, 559 U.S. at 138-43; *see also Castleman*, 134 S. Ct. at 1412 ("Minor uses of force may not constitute 'violence' in the generic sense.").

[59] *Chapman*, 866 F.3d at 132-33.

Armed with that interpretation of the elements clause, we can examine the text of § 2702(a)(4) and readily conclude that second-degree aggravated assault with a deadly weapon categorically involves the use or attempted use of physical force. Section § 2702(a)(4) criminalizes "attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon."[60] "Bodily injury" is statutorily defined as "[i]mpairment of physical condition or substantial pain."[61] And "deadly weapon" is defined to include any firearm, device "designed as a weapon and capable of producing death or seriously bodily injury," or device or instrument used in a manner "calculated or likely to produce death or serious bodily injury."[62] Taken together, the "minimum conduct" sufficient to sustain a § 2702(a)(4) conviction is an attempt to cause another person to experience substantial pain with a device capable of causing serious bodily injury.[63] As a practical and legal matter, an offender can do so only by attempting to use physical force against another person.[64] Because § 2702(a)(4) categorically has

---

[60] 18 Pa. C.S. § 2702(a)(4); *see also id.* § 901 (defining "criminal attempt").

[61] *Id.* § 2301.

[62] *Id.*

[63] PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS §§ 15.2702E-15.2702F (Pa. Bar. Inst., 3d ed. 2016); *see Moncrieffe*, 569 U.S. at 191 (requiring courts to assume the conviction rested on the "minimum conduct criminalized by the state statute").

[64] *Chapman*, 866 F.3d at 133; *see Castleman*, 134 S. Ct. at 1416-17 (Scalia, J., concurring) ("It is impossible to cause bodily injury without using force 'capable of' producing that result." (quoting *Johnson I*, 559 U.S. at 140)).

"physical force" as an element, a prior § 2702(a)(4) conviction is a crime of violence.

This conclusion is dictated by the Supreme Court's recent decision in *United States v. Castleman*—a case involving statutory language that is identical (in relevant part) to the language at issue here. There, the defendant pled guilty to "having 'intentionally or knowingly cause[d] bodily injury' to the mother of his child."[65] The question on appeal, as here, was whether that conviction "necessarily had, as an element, the use or attempted use of physical force."[66] Answering that question in the affirmative, the Supreme Court explained that a conviction under a statute proscribing "the knowing or intentional causation of bodily injury" is a conviction that "necessarily involves the use of physical force."[67] That analysis establishes here that second-degree aggravated assault with a deadly weapon, which similarly requires proving the attempted, knowing, or intentional causation of bodily injury, is categorically a violent crime.

In response, Ramos relies on *Commonwealth v. Thomas* to argue that aggravated assault under Pennsylvania law does not necessarily involve the use, threatened use, or attempted use of force.[68] In *Thomas*, the defendant starved her four-year-old son to death and was subsequently convicted of first-degree aggravated assault, in violation of

---

[65] *Castleman*, 134 S. Ct. at 1409.

[66] *Id*. at 1413-14 (internal quotation marks omitted).

[67] *Id.* at 1414 (emphasis added); *see Chapman*, 866 F.3d at 133 (applying the *Castleman* standard when determining if a defendant is a career offender under the Guidelines).

[68] 867 A.2d 594 (Pa. Super. 2005).

§ 2702(a)(1). In denying her challenge to the sufficiency of the evidence supporting her conviction, the Superior Court observed that "evidence of the use of force or the threat of force is not an element of the crime of aggravated assault."[69] Focusing on that quote and the defendant's offense conduct in *Thomas*, Ramos argues that his conviction is not a crime of violence because the aggravated assault statute allows for conviction based merely on inaction (*e.g.*, child neglect), and thus does not require any affirmative act of physical force. But there is a fatal flaw in that reasoning: *Thomas* has no bearing on the issue of whether *second-degree* aggravated assault with a deadly weapon is a crime of violence because *Thomas* addressed only a conviction for *first-degree* aggravated assault under § 2702(a)(1)—a wholly separate criminal offense containing materially different elements than the offense at issue here.[70] Ramos cites no authorities establishing that an offender's inaction alone would be sufficient to sustain a § 2702(a)(4) conviction. And it is nearly impossible to conceive of a scenario in which a person could knowingly or intentionally injure, or attempt to injure,

---

[69] *Thomas*, 867 A.2d at 597.

[70] *Id.*; *see Rhoads*, 8 A.3d at 918. Unlike § 2702(a)(4), the first-degree aggravated assault provision at issue in *Thomas* does not require the use of a deadly weapon and allows for conviction where a person, *inter alia*, "attempts to cause serious bodily injury to another, or causes such injury . . . recklessly under the circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S. § 2702(a)(1) (emphasis added).

another person with a deadly weapon without engaging in at least some affirmative, forceful conduct.[71]

For these reasons, we conclude that Ramos's prior conviction for second-degree aggravated assault with a deadly weapon, in violation of 18 Pa. C.S. § 2702(a)(4), is categorically a crime of violence under the elements clause of the Guidelines.

### D. Ramos Is a Career Offender Under the Guidelines

The foregoing analysis establishes that the District Court erred by concluding that Ramos was not a career offender under Section 4B1.1 of the Guidelines—a conclusion that resulted in a miscalculation of Ramos's advisory Guidelines range.[72] The parties agree that Ramos's 1999 drug conviction is a predicate controlled substance offense, and we have concluded that Ramos's prior aggravated assault conviction is a predicate crime of violence. Ramos therefore should have been designated a career offender for sentencing purposes.

## CONCLUSION

---

[71] *Moncrieffe*, 569 U.S. at 191 (admonishing that the categorical approach is not an "invitation to use legal imagination" (internal quotation marks omitted)).

[72] *Compare* U.S.S.G. § 4B1.1(b) (providing that a "career offender's criminal history category in every case . . . shall be Category VI"), *with* App. 63 (determining at sentencing that Ramos had a Category IV criminal history).

The U.S. Sentencing Commission has concluded that offenders with at least two drug or violent felony convictions should be subject to sentences that reflect the seriousness of their past criminal conduct. Although faithful application of the categorical approach at times results in outcomes that frustrate this policy objective,[73] our holding today does not: Ramos is a career offender because his prior conviction for second-degree aggravated assault with a deadly weapon, in violation of 18 Pa. C.S. § 2702(a)(4), is categorically a predicate crime of violence. Because the District Court's calculation of Ramos's advisory Guidelines range did not reflect his career-offender status, we will vacate the judgment of sentence and remand for resentencing.

---

[73] *See e.g.*, *Mathis*, 136 S. Ct. at 2258 (Kennedy, J., concurring) (explaining that the court's holding is "a stark illustration of the arbitrary and inequitable results produced by applying an elements based approach to this sentencing scheme"); *Chapman*, 866 F.3d at 134 (Jordan, J., concurring) (critiquing this aspect of the categorical approach); *United States v. Faust*, 853 F.3d 39 (1st Cir. 2017) (Lynch, J., concurring) (same); *United States v. Parnell*, 818 F.3d 974, 982-83 (9th Cir. 2016) (Watford, J., concurring) (similar).