**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2613
_____

UNITED STATES OF AMERICA

v.

DARRON HENDERSON,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-21-cr-00184-001)
U.S. District Judge:  Honorable Chad F. Kenney

_____

Argued: July 11, 2023
_____

Before:  SHWARTZ, RESTREPO, and CHUNG, <u>Circuit
Judges</u>.

(Filed: August 15, 2023)

Caroline G. Cinquanto
2 Greenwood Square

3331 Street Road
Bensalem, PA 19020

Brett G. Sweitzer [ARGUED]
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

      Counsel for Appellant

Michael R. Miller
Shannon G. Zabel
Robert A. Zauzmer [ARGUED]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

      Counsel for Appellee

_____

OPINION OF THE COURT
_____


SHWARTZ, Circuit Judge.

Darron Henderson received a sentencing enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(a)(4) based on his Pennsylvania robbery conviction

2

because the District Court concluded that the subsection of the robbery statute Henderson violated, 18 Pa. Cons. Stat. § 3701(a)(1)(ii), qualifies as a "crime of violence" as defined by U.S.S.G. § 4B1.2(a). The District Court was correct and so we will affirm.

I

In 2019, police officers stopped Henderson due to a traffic violation, searched his vehicle, and found a loaded semi-automatic firearm with an obliterated serial number and thirteen rounds of ammunition. Henderson was indicted for, and pled guilty to, possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). At the time of the offense, Henderson had a prior state robbery conviction under 18 Pa. Cons. Stat. § 3701(a)(1)(ii).

At sentencing, the District Court applied the sentencing enhancement under U.S.S.G. § 2K2.1(a)(4) based on Henderson's robbery conviction. The Court concluded that: (1) § 3701(a) is divisible and Henderson was convicted of violating subsection (ii) of the statute; and (2) subsection (ii) qualified as a "crime of violence" under U.S.S.G. § 4B1.2(a) because the subsection provides that a person is guilty of robbery if he "threatens another with or intentionally puts him in fear of immediate serious bodily injury," App. 109 (quoting 18 Pa. Cons. Stat. § 3701(a)(1)(ii)), 120, which means a violation of the subsection necessarily "requires the purposeful use or threat of physical force against another," App. 109, 120.

Based on this prior conviction, Henderson's base offense level was twenty. U.S.S.G. § 2K2.1(a)(4). This offense level was increased by four because the firearm he

3

possessed had an obliterated serial number, U.S.S.G. § 2K2.1(b)(4)(B), and reduced by three for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a total offense level of twenty-one. Given his criminal history category of IV, his Guideline range was fifty-seven to seventy-one months' imprisonment. The Court imposed a sentence of sixty months' imprisonment and three years' supervised release.

Henderson appeals.

## II[1]

### A

A defendant convicted of violating § 922(g)(1) faces an enhanced base offense level under the Sentencing Guidelines if he has a prior felony conviction of "either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2), (a)(4)(A). The Guidelines define a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review the District Court's factual findings for clear error and its legal conclusions de novo, United States v. Lowe, 791 F.3d 424, 427 (3d Cir. 2015), including the Court's determination that a conviction constitutes a "crime of violence" under the Guidelines, United States v. Chapman, 866 F.3d 129, 131 (3d Cir. 2017).

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). The first section is known as the "elements clause," and the second section is known as the "enumerated offenses clause." United States v. Ramos, 892 F.3d 599, 605 (3d Cir. 2018).

To decide whether an offense constitutes a crime of violence, we apply the "categorical approach," which requires "compar[ing] the elements of the statute under which the defendant was convicted to the [G]uidelines' definition of crime of violence." Id. at 606 (quotations and citation omitted). If the statute forming the basis of the defendant's conviction necessarily has as an element "the use, attempted use, or threatened use of physical force against another person," or if its elements substantially correspond to the elements of one of the enumerated offenses, then the statute proscribes a predicate crime of violence within the meaning of the Guidelines. Id.; United States v. Brasby, 61 F.4th 127, 134 (3d Cir. 2023). If, however, the statute of conviction lacks such an element, it "sweeps more broadly" than the Guidelines definition and does not qualify as a crime of violence, even if

5

the defendant actually committed the offense by using, attempting to use, or threatening to use physical force against another person. Ramos, 892 F.3d at 606 (citation omitted). Thus, we "not only [] ignore the actual manner in which the defendant committed the prior offense, but also [] presume that the defendant did so by engaging in no more than 'the minimum conduct criminalized by the state statute.'" Id. (quoting Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)).

When a statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," it is divisible, and we must identify which of the alternate elements was the basis for the conviction. Mathis v. United States, 579 U.S. 500, 505-06 (2016). Under this "modified categorical approach," we identify the statutory offense of conviction by looking at a "specific set of extra-statutory documents," such as the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge." Ramos, 892 F.3d at 606-07.

Thus, we must first determine whether the Pennsylvania robbery statute is divisible. If it is divisible, then we must identify the provision that formed the basis of Henderson's conviction, and thereafter determine whether that provision constitutes a crime of violence under the elements clause or enumerated offenses clause.

B

Under Pennsylvania law, a person commits robbery, if "in the course of committing a theft,"[2] he:

> (i) inflicts serious bodily injury upon another;
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
>
> (iii) commits or threatens immediately to commit any felony of the first or second degree;
>
> (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
>
> (v) physically takes or removes property from the person of another by force however slight; or
>
> (vi) takes or removes the money of a financial institution . . . .

18 Pa. Cons. Stat. § 3701(a)(1). "Theft means taking someone else's property intending not to give it back." Pa. Suggested Standard Criminal Jury Instructions 15.3701A. Robbery under subsections (i)–(iii) are first-degree felonies, robbery under subsections (iv) and (vi) are second-degree felonies, and

---

[2] "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa. Cons. Stat. § 3701(a)(2).

robbery under subsection (v) is a third-degree felony. 18 Pa. Cons. Stat. § 3701(b)(1). These various felony levels carry different penalties.[3]

The subsections of § 3701(a)(1) are not separate means of satisfying a specific element, but rather "clearly la[y] out alternative elements" for separate robbery offenses.[4] United States v. Peppers, 899 F.3d 211, 232 (3d Cir. 2018) (citation omitted) (holding § 3701 divisible); see also United States v. Blair, 734 F.3d 218, 225 (3d Cir. 2013) (same). Moreover, the fact that the various subsections trigger different penalties shows that they are alternative elements that must be proven. Mathis, 579 U.S. at 518 ("If statutory alternatives carry different punishments . . . they must be elements."). For these reasons, § 3701 is divisible. Peppers, 899 F.3d at 232; Blair, 734 F.3d at 225.

---

[3] First-degree felonies are subject to a maximum term of twenty years' imprisonment. 18 Pa. Cons. Stat. § 1103(1). Second-degree felonies are subject to a maximum term of ten years' imprisonment. 18 Pa. Cons. Stat. § 1103(2). Third-degree felonies are subject to a maximum term of seven years' imprisonment. 18 Pa. Cons. Stat. § 1103(3).

[4] Henderson argues on appeal that § 3701 is not divisible, but he withdrew his divisibility argument before the District Court and conceded at sentencing that the statute is divisible. Although Henderson failed to preserve his challenge, Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146-47 & n.7 (3d Cir. 2017) (explaining a claim is "waived" when intentionally abandoned, and "may not be resurrected on appeal"), the categorical approach requires that we determine whether § 3701 is divisible to ensure we are examining the actual crime of conviction.

Because § 3701 is divisible, we apply the "modified categorical approach," which allows us to consider "extra-statutory documents" to identify the subsection under which Henderson was convicted. Ramos, 892 F.3d at 606-07. The parties do not dispute that Henderson was convicted under subsection (ii). As a result, we next examine whether subsection (ii) of the Pennsylvania robbery statute is a crime of violence under either § 4B1.2(a)'s elements clause or its enumerated offenses clause.

C

To qualify as a crime of violence under the elements clause, the offense must have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). For subsection (ii) to meet this definition, (1) a defendant must threaten to use physical force, Ramos, 892 F.3d at 611, and (2) the threat must be made intentionally or knowingly, Borden v. United States, 141 S. Ct. 1817, 1826 (2021).[5] As we will explain, subsection (ii) meets both requirements and thus qualifies as a crime of violence.

_____

[5] Borden addressed the elements clause of the ACCA, which is identical to the elements clause of § 4B1.2(a)(1). See 18 U.S.C.A. § 924(e)(2)(B)(i). Given their similarity, "courts generally apply authority interpreting one provision to the other." United States v. Brasby, 61 F.4th 127, 133 (3d Cir. 2023).

Borden left open the question of whether offenses requiring a mental state of "extreme recklessness" satisfy the elements clause. 141 S. Ct. at 1825 n.4. Because this is an

9

1

The first question is whether a theft where a defendant "threatens another with or intentionally puts him in fear of immediate serious bodily injury," 18 Pa. Cons. Stat. § 3701(a)(1)(ii), involves the threatened use of physical force against another. Section 4B1.2(a)(1) envisions the requisite "use of physical force" as "force capable of causing physical pain or injury." Stokeling v. United States, 139 S. Ct. 544, 553 (2019) (quotations omitted).

The plain language of subsection (ii) satisfies this requirement. The statute states that the threatened force must place the victim in fear of immediate "serious bodily injury." Pennsylvania defines "[b]odily injury" as an "[i]mpairment of physical condition or substantial pain," and "[s]erious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. Cons. Stat. § 2301. Because subsection (ii) requires proof that the victim was threatened with, or put in fear of, immediate serious bodily injury, it contemplates a level of force that is capable of causing physical pain or injury and therefore satisfies the force provision of § 4B1.2(a)'s elements clause. Cf. United States v. McCants, 952 F.3d 416, 428 (3d Cir. 2020) (holding textually similar

open question, we do not address it here and focus our analysis on whether robbery under subsection (ii) requires that the offense be committed intentionally or knowingly.

New Jersey robbery statute qualified as crime of violence because it required a threat of "bodily injury").[6]

[6] United States v. Harris, 289 A.3d 1060 (Pa. 2023), and its conclusion that Pennsylvania's aggravated assault statute does not require force, is not applicable. In Harris, the Pennsylvania Supreme Court explained that the aggravated assault statute did not contain a requirement of force and thus could be violated by an omission. Id. at 1074. The court observed that the aggravated assault statute does not identify the "manner of causing a particular bodily injury," instead providing only that a defendant must "cause" such injury. Id. at 1070-71. Like the statutes Harris distinguished from aggravated assault, such as an "attempt[] by physical menace" to put others in fear of bodily injury, subsection (ii) criminalizes a specific act. As we explain in the following section, subsection (ii)'s "threaten another" language identifies the act in which the defendant must engage, namely a declaration directed toward another. Thus, because subsection (ii) identifies the manner by which the harm must be caused, it differs from the aggravated assault statute. By identifying the act, subsection (ii) robbery cannot be committed by omission.

Furthermore, unlike the aggravated assault statute, subsection (ii) requires that the victim be threatened with or placed in fear of "immediate" serious bodily injury. Harris is also distinguishable because in its examination of Pennsylvania's aggravated assault statute it relied on a case in which a mother was charged with aggravated assault through an act of omission (i.e., starving a child to death), but such an act would not satisfy the immediacy requirement in subsection (ii). In the same way, a theft where a nursing home caretaker who threatens to withhold medication necessary to prevent

The second question is whether subsection (ii) requires proof that the defendant acted with a knowing or intentional state of mind. Subsection (ii) prohibits, in the course of committing a theft, "threaten[ing] another with or intentionally put[ting] him in fear of immediate serious bodily injury." 18 Pa. Cons. Stat. § 3701(a)(1)(ii). The second clause of subsection (ii) explicitly provides for an intentional state of mind by making it a crime to "intentionally put[] [another] in fear of immediate serious bodily injury." Id. The first clause

---

adverse medical consequences unless the patient gave the caretaker money would not satisfy the immediacy requirement. For this additional reason, Harris is not applicable.

This result is confirmed by applying the realistic probability test. Having found that subsection (ii) satisfies 4B1.2(a)(1)'s requisite quantum of force, to demonstrate that subsection (ii) is yet still broader than § 4B1.2(a)(1), Henderson must show a "realistic probability, not a theoretical possibility, that the State would apply its statute" to a threat of immediate serious bodily injury by omission. Moncrieffe v. Holder, 569 U.S. 184, 191 (2013). To show such a realistic probability, "an offender must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special [] manner for which he argues." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). Because Henderson has failed to identify any case in which Pennsylvania applied subsection (ii) to threats of immediate serious bodily injury by omission, we hold that subsection (ii) is not broader than § 4B1.2(a)(1) on this basis.

lacks the word "intentionally," stating only that a person is guilty of a robbery if he "threatens another with . . . immediate serious bodily injury." 18 Pa. Cons. Stat. § 3701(a)(1)(ii). The text, structure, and case law, however, show that the first clause also captures an intentional or knowing mens rea.

A term in a statute "is given more precise content by the neighboring words with which it is associated." United States v. Williams, 553 U.S. 285, 294 (2008). The Supreme Court applied this principle in Borden, where the Court considered two different interpretations of the phrase "use of physical force against the person of another," as used in the ACCA. The parties agreed that the "use of physical force" means the "volitional" or "active" employment of force but had different views as to whether "against the person of another" had: (1) a passive meaning, which supported a mens rea of recklessness; or (2) an oppositional meaning, which supported a stricter mens rea. 141 S. Ct. 1817, 1825-1830 (2021). The passive reading would interpret "against" to mean "making contact with," e.g. "waves crashing against the shore." Id. at 1827 (quotations omitted). The oppositional reading of "against" would interpret the phrase to introduce a "conscious object" or "intended target" of the force, not a "mere recipient" of the force by happenstance, e.g. "[t]he general deployed his forces against a rival regiment." Id. at 1825-26. The Court adopted the oppositional interpretation because "against" was paired with "use of physical force," and the "pairing of a volitional action with the word 'against' supports that word's oppositional, or targeted, definition." Id. at 1826.

The same interpretation applies here. Viewing subsection (ii)'s threatens clause in its entirety, the clause "threatens another with [] immediate serious bodily injury" has

13

an oppositional meaning because the language "another with" introduces an intended target, not a mere recipient of the threat by happenstance.

Pennsylvania courts, which are "the ultimate expositors" of Pennsylvania law, support this interpretation of "threatens another" in subsection (ii). Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); see also Jackson v. Virginia, 443 U.S. 307, 324 n.16 (1979) (recognizing that States have the power to define the substantive elements of criminal offenses). Under Pennsylvania law, the "common and approved usage" of a word dictates how it is construed within a statute. 1 Pa. Cons. Stat. § 1903(a). See also Commonwealth v. Griffin, 207 A.3d 827, 830 (Pa. 2019) ("[T]he plain language of the statute itself provides the clearest indication of legislative intent."). When determining a word's common meaning, Pennsylvania law directs us to consult a dictionary. See e.g., Chamberlain v. Unemployment Comp. Bd. of Rev., 114 A.3d 385, 394 (Pa. 2015) ("It is well-established that the common and approved meaning of a word may be ascertained from an examination of its dictionary definition."). Black's Law Dictionary defined "threat" at the time § 3701 was enacted as "[a] declaration of intention or determination to inflict punishment, loss, or pain on another . . . [; a] declaration of one's purpose or intention to work injury to the person, property, or rights of another." See Threat, Black's Law Dictionary (4th ed. 1968). Thus, interpreting the "threatens another" language to convey an intentional act, where the perpetrator knowingly states his intent to harm his victim, is consistent with directives found within Pennsylvania law.[7]

_____

[7] We acknowledge that the word "threat" alone has been viewed as an actus reus and does "not carry its own

14

Pennsylvania case law further supports this interpretation of subsection (ii). In Commonwealth v. Thomas, 546 A.2d 116 (Pa. Super. Ct. 1988), appeal denied, 554 A.2d 509 (Pa. 1989), the state court explained that a defendant violates subsection (ii) if his threat "was calculated to inflict fear of serious bodily injury." Id. at 118. The court's use of the word "calculated" suggests that, to commit a violation of subsection (ii), a defendant must intend to inflict fear of serious bodily injury on the victim. Id. at 119.

Thus, the clause "threatens another with . . . immediate serious bodily injury" conveys an intentional act because the threat must be directed toward another person with the intent of causing the victim to fear serious bodily injury. See Borden, 141 S. Ct. at 1827; Thomas, 546 A.2d at 119; see also United States v. Stanford, No. 22-1272, 2023 WL 4835133 (3d Cir. July 28, 2023) (holding that Delaware robbery, 11 Del. C. § 831(a), qualifies as a crime of violence under the elements clause because it "requires the intentional use or threatened use of immediate force 'upon another person,'" and thus involves force that is "consciously directed" toward a victim (quoting

---

implicit mens rea," Larios v. Att'y Gen., 978 F.3d 62, 71 (3d Cir. 2020) (citing Bovkun v. Ashcroft, 283 F.3d 166, 170 (3d Cir. 2002)); see also Counterman v. Colorado, 143 S. Ct. 2106, 2117-18 (2023) (recognizing that a threat is an act that does not embody a particular mens rea and acknowledging that a threat may be committed recklessly), but here, where "threatens" is coupled with a word of directionality, such as "another," the phrase "threatens another" provides insight into the state of mind with which that threat occurs. Thus, our consideration of the dictionary definition of "threat" is not inconsistent with Larios.

15

<u>Borden</u>, 141 S. Ct. at 1826)).[8]  Because the "plain language of the statute is the best indication of the legislature's intent," <u>In re B.W.</u>, 250 A.3d 1163, 1171 (Pa. 2021), and the language of subsection (ii) requires intentional conduct, we need not rely on the Pennsylvania Criminal Code's default mens rea provision to identify the applicable state of mind for violating subsection (ii).  We therefore conclude that subsection (ii) embodies an intentional mens rea.

Because subsection (ii) involves the requisite force and mens rea to qualify as a crime of violence under § 4B1.2's elements clause, we need not decide whether it is also one of the crimes listed in the enumerated offenses clause.[9]

---

[8] Henderson asserts that reading a mens rea of intent into the first clause of subsection (ii) would render the word "intentionally" in the second clause superfluous.  However, the first clause's use of the phrase "threatens another" addresses a specific type of act, namely a communication that conveys an intent to harm, and therefore the legislature did not need to use the word "intentionally" to convey a knowing or intentional mens rea.  The second clause uses the phrase "intentionally puts him in fear."  Without the use of the word "intentionally," conduct that "puts another in fear" could cover reckless actions.  Thus, unlike the first clause, the inclusion of the word "intentionally" in the second clause is necessary to demonstrate the legislature's intent to punish only knowing or intentional conduct.

[9] Pennsylvania courts have viewed § 3701(a)(1)(ii) as "substantially identical in nature and definition" to federal bank robbery under 18 U.S.C. § 2113(a), <u>Commonwealth v. Taylor</u>, 831 A.2d 661, 665-66 (Pa. Super. Ct. 2003), and we have held § 2113(a) to be a crime of violence under

## III

For the foregoing reasons, we will affirm.

---

§ 4B1.2(a)(1), <u>United States v. Wilson</u>, 880 F.3d 80, 85 (3d Cir. 2018). This provides further support for the view that subsection (ii) qualifies as a § 4B1.2(a) crime of violence.