**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-1631

———————

UNITED STATES OF AMERICA,

v.

DAVID PAYO,

Appellant

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2:17-cr-00211-001)
District Judge: Honorable Mark R. Hornak

———————

Argued on January 22, 2025

Before: HARDIMAN, McKEE, and AMBRO, *Circuit Judges*

(Opinion filed: April 28, 2025)

Laura S. Irwin
Matthew S. McHale [**ARGUED**]
OFFICE OF UNITED STATES ATTORNEY
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

       *Counsel for Appellee*

Renee Pietropaolo [**ARGUED**]
OFFICE OF FEDERAL PUBLIC DEFENDER
1001 Liberty Avenue
Suite 1500
Pittsburgh, PA 15222

       *Counsel for Appellant*

_____

OPINION OF THE COURT
_____

AMBRO, *Circuit Judge*

David Payo pled guilty to committing two robberies in 2017. The District Court applied a career-offender enhancement to his sentence based on three of his previous robbery convictions: one federal conviction from 2001, one Pennsylvania conviction from 2008, and one Pennsylvania conviction from 2010. Payo argued that the enhancement was unwarranted because the 2008 and 2010 convictions did not involve crimes of violence. The District Court disagreed, holding that both did—the former based on a state-court docket sheet the Government had not produced, the latter based on an argument the Government had not advanced. We disagree with both

decisions, so we vacate Payo's sentence and remand for further proceedings.

## I.  BACKGROUND

Payo was indicted for two counts of bank robbery and one count of Hobbs Act robbery. He pled guilty to the two bank-robbery counts, although his plea agreement allowed him to appeal any career-offender sentencing enhancement.

The Probation Office determined under the Sentencing Guidelines that Payo was a career offender with a total offense level of 29 and a criminal history category of VI. According to the Guidelines, a defendant is a career offender subject to a sentencing enhancement if he or she, among other things, has "at least two prior felony convictions of … a crime of violence." U.S. Sent'g Guidelines Manual § 4B1.1(a) (U.S. Sent'g Comm'n Nov. 2016). A prior conviction is a crime of violence if the underlying offense was "punishable by imprisonment for a term exceeding one year," and either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm … or explosive material." U.S.S.G. § 4B1.2(a). We often call the first prong the force (or elements) clause and the second the enumerated-offenses clause.

The Probation Office based Payo's career-offender status on a 2001 federal conviction for robbing two banks; a 2008 Pennsylvania conviction for robbing two stores; and a 2010 Pennsylvania conviction for robbing another bank. At the time of Payo's 2008 and 2010 convictions, Pennsylvania's robbery statute provided in relevant part that:

3

> A person is guilty of robbery if, in the course of committing a theft, he:
>
>> (i) inflicts serious bodily injury upon another;
>>
>> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; [or]
>>
>> …
>>
>> (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury ….

18 Pa. Cons. Stat. § 3701(a)(1).

To determine Payo's sentence, the District Court ordered the parties to submit sentencing memorandums. Payo submitted one, but the Government did not. After reviewing Payo's submission, the District Court acknowledged that he had "raise[d] a number of legal issues" about "whether the 'Career Offender' provisions … appl[ied]." App. 40 (Dkt. No. 56). It was "stumped as to why the United States would not want to weigh in as to such important matters" and "provide[d] [it] with a final opportunity to do so." App. 40 (Dkt. No. 56).

This time, the Government responded. It argued that the career-offender enhancement applied to Payo based on his 2001 and 2008 convictions. In its view, Payo's two-count conviction for bank robbery under 18 U.S.C. § 2113(a) counted as two crimes of violence. For good measure, it also claimed, relying solely on the presentence report, that his 2008 Pennsylvania conviction for robbery was under § 3701(a)(1)(ii) and thus involved a crime of violence.

The District Court held a status conference to discuss the parties' sentencing submissions, during which it explained

4

that it could not determine, based on the presentence report alone, which subsection of § 3701(a)(1) had supported Payo's 2008 conviction. As we explain below, the answer to that question matters a great deal. Subsection (ii)—the one the Government claimed Payo was convicted under—is a crime of violence. But other subsections might not be. To answer this question, the District Court intended to deploy something called the modified categorical approach, which would involve looking at a narrow category of reliable materials known as *Shepard* documents to determine which subsection in fact supported Payo's conviction. *See infra* Section III.A.1. After the hearing, the District Court ordered the Government to produce *Shepard* documents shedding light on the 2008 conviction.

Over Payo's objection, the Government produced several documents. It now claimed that the documents showed "Payo was convicted of two counts of 18 Pa. [Cons. Stat. §] 3701(a)(1)(i) *or* (ii)," and "submit[ted] that *either* of these convictions would qualify as a crime of violence." App. 176 (emphases added). The Government also argued in its cover memorandum, apparently for the first time, that Payo's 2010 conviction under § 3701(a)(1)(iv) involved a crime of violence under the force clause. It said nothing about the enumerated-offenses clause.

After reviewing the Government's documents, the District Court concluded that Payo's two-count federal conviction constituted only a single crime of violence. And it also found that the Government's *Shepard* documents had not established whether Payo's 2008 conviction was under subsection (i) or (ii). To resolve the matter, it took judicial notice of a state-court docket sheet indicating that the conviction was under the latter. It rested its conclusion on the docket sheet even though it was not generated by the Pennsylvania convicting court and

included a prominent disclaimer that its contents may be inaccurate.

The Court then turned to Payo's 2010 conviction. It declined to adopt the Government's argument that subsection (iv) qualified as a crime of violence under the force clause. It instead held that subsection qualified under the enumerated-offenses clause because its elements categorically matched those of the generic definition of robbery.

In the end, the Court agreed with the Probation Office's Guidelines calculation: Payo's offense level was 29, his criminal history category was VI, and his Guidelines range was between 151 and 188 months. It sentenced him to two concurrent terms of 127 months' incarceration and three years' supervised release. Payo timely appealed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of a district court and under 18 U.S.C. § 3742(a) because this is an appeal of a sentence imposed under the Sentencing Reform Act of 1984.

We review anew the District Court's legal conclusions, including its determination that a conviction constitutes a "crime of violence" under the Guidelines. *United States v. Henderson*, 80 F.4th 207, 210 n.1 (3d Cir. 2023) (quoting *United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017)). We review any factual findings for clear error. *United States v. Bentley*, 49 F.4th 275, 291 (3d Cir. 2022). And we review determinations that the Government waived or forfeited legal arguments for abuse of discretion. *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 219 n.9 (3d Cir. 2021).

6

### III. THE DISTRICT COURT EXCUSED FORFEITURES AND CONSIDERED A NON-*SHEPARD* DOCUMENT.

Before us, Payo focuses on three arguments, though each contains sub-arguments. First, he contends that the District Court violated party-presentation and separation-of-power principles by resurrecting arguments that the Government had forfeited. In his view, the parties, not the courts, present the issues and facts, so when a district court excuses one side's forfeitures without explanation, it deprives the parties of their right to frame the case. And when the Federal Government is the party whose forfeitures are excused, Payo claims a district court also interferes with the choices of a coordinate branch. Second, Payo argues that the Court abused its discretion by relying on the state-court docket sheet to determine that his 2008 conviction was under § 3701(a)(1)(ii) rather than (i). He believes that it should have confined its analysis to the *Shepard* documents the parties submitted and that it strayed when it considered the docket sheet. And third, Payo claims that neither subsection (i) nor (iv) categorically matches generic robbery, and thus neither qualifies as a career-offender crime.

### A. Did the District Court Impermissibly Excuse any Government Forfeitures?

Payo argues that the District Court violated party-presentation and separation-of-powers principles in three ways.

1. The Government forfeited its right to introduce *Shepard* documents, and the District Court improperly excused that forfeiture when it afforded the Government another opportunity to do so before sentencing.

2. The Court improperly relieved the Government of its burden to prove that the sentencing enhancement should

7

apply by relying on a document—the state-court docket sheet—that the Government never submitted.

3.  The Court advanced, and then accepted, an argument the Government never made: that Payo's 2010 conviction under § 3701(a)(1)(iv) satisfied the enumerated-offenses clause. According to Payo, the Government argued only that Pennsylvania robbery satisfied the force clause—an argument the District Court declined to adopt.

Though Payo's first two arguments are wrong, his third is right.

### 1. The District Court Could Afford the Government Another Opportunity to Produce *Shepard* Documents Before Sentencing.

In the ordinary case, a court deciding whether a prior conviction qualifies as a crime of violence may look only at the elements of the offense that supported the prior conviction. We call this mode of analysis the categorical approach. In cases like this one, however—when several independently sufficient elements could have supported the conviction—the parties may introduce a narrow set of reliable materials solely to help the court identify the elements that in fact sustained the conviction. *See Shepard v. United States*, 544 U.S. 13, 16 (2005) (typical materials include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). Because this is a variation on the standard categorical approach, courts call it the modified categorical approach and the limited set of materials *Shepard* documents. "The Supreme Court has repeatedly stressed that there is a 'demand for certainty' in determining whether a defendant was convicted of a

qualifying offense." *United States v. Gandy*, 917 F.3d 1333, 1340 (11th Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. 500, 519 (2016)). To that end, *Shepard* documents must have the "conclusive significance of a prior judicial record," *Shepard*, 544 U.S. at 25, and must "speak plainly" in establishing the elements of the underlying offense, *Mathis*, 579 U.S. at 519.

The Government "bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies." *United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014). According to Payo, the "[G]overnment waived its right to present evidence and argument to satisfy its burden" by repeatedly declining to submit *Shepard* documents and choosing instead to rest on the presentence report. Appellant's Br. 15–16. The Court's decision to give the Government another chance before the sentencing hearing, he believes, was an abuse of discretion.

"We enforce waiver and forfeiture against criminal defendants and the [G]overnment equally." *United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (Hardiman, J.). "The policy supporting waiver and forfeiture is the 'party presentation principle,' which applies 'in both civil and criminal cases, in the first instance and on appeal.'" *Id.* at 140–41 (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). "[C]ategorically excus[ing] waivers or forfeitures … would violate the party presentation principle," which "ensures that courts decide only those issues argued by interested and motivated litigants." *Id.* at 145. "And when, as in this case, the [G]overnment is a party, categorically excusing forfeiture would raise separation of powers concerns" too, because at sentencing "the [G]overnment—not the Court—bears the burden of proving" that an enhancement applies. *Id.* at 146.

9

Payo cites no cases holding that a sentencing court abuses its discretion, or violates any of the other principles he invokes, by affording a party additional opportunities to build the record *before* sentencing. The cases he does cite—*United States v. Sineneng-Smith*, 590 U.S. 371 (2020), and *Dowdell*—are not on point.

In *Sineneng-Smith*, the Ninth Circuit appointed, sua sponte, amici to make a constitutional argument that the parties never raised. 590 U.S. at 374. The Supreme Court held that this "takeover of the appeal" was a "radical transformation of th[e] case [that went] well beyond the pale." *Id.* at 379–80. By contrast, affording the Government another opportunity to support an argument it had made all along—before the sentencing hearing—is not a "radical transformation."

And in *Dowdell*, the Government forfeited a legal argument against suppressing evidence from a traffic stop, yet it argued that the district court should have considered it anyway. 70 F.4th 134. We disagreed. "Had the [d]istrict [c]ourt intervened [t]here by excusing the Government's forfeiture and applying [its] own novel legal theory, it would have undermined the judiciary's neutrality and encroached upon the executive branch's prosecutorial prerogative to argue its case." *Id.* at 146. Again, affording the parties another opportunity to flesh out the record before resolving a crucial factual question is different from and more ordinary than advancing and accepting a legal argument that neither party made.

## 2. A District Court Can Judicially Notice Documents the Government Never Produced.

Payo next argues that even if the District Court's decision to afford the Government another opportunity to submit *Shepard* documents was within its discretion, its decision to

10

seek out those documents independently was not. The Government disputes the premise. In its view, the Court did not conduct its own investigation. It merely judicially noticed a docket sheet—something it may do even if neither party submitted it.

The Government has the better argument. To be sure, Payo is correct that the Government bears the ultimate burden of proving that the career-offender enhancement applies. *Napolitan*, 762 F.3d at 309. But just because it bears that burden does not mean that the District Court cannot consider judicially noticeable material. Although the Federal Rules of Evidence do not apply to sentencing matters, Fed. R. Evid. 1101(d)(3), Rule 201(c)(1) illustrates the general principle that a court may "take judicial notice on its own," even though one party almost always has the ultimate burden of proof.

Whether the District Court could, however, consider this docket sheet when employing the modified categorical approach to determine whether a sentencing enhancement applies is a different question. As we later explain, it could not because this docket sheet was not a *Shepard* document. *See infra* Section III.B.1.b.

### 3. The Government Forfeited Its Argument That Payo's 2010 Conviction Under § 3701(a)(1)(iv) Satisfied the Enumerated-Offenses Clause.

Payo also claims that the District Court erred by advancing and accepting an argument for the sentencing enhancement that the Government never made. In its sentencing memorandum, the Government never claimed that subsection (iv) was a crime of violence. It instead rested its sentencing argument on Payo's prior federal conviction and 2008 Pennsylvania conviction. It was not until its *Shepard* submission that the Government finally asserted that subsection (iv) was a crime of

11

violence. Even then, it limited its argument to the force clause. The District Court implicitly acknowledged as much in its sentencing opinion when it noted that "only the Defendant has offered a generic version of robbery." App. 18. The closest the Government came was when it cited *United States v. Ball* for the proposition that "[t]he First Circuit has held that 18 [Pa. Cons. Stat. §] 3701(a)(1)(iv) is a crime of violence." App. 176 (citing 870 F.3d 1, 6 (1st Cir. 2017)).

The District Court declined to hold that subsection (iv) was a crime of violence under the force clause. And it reasoned that *Ball* was not on point because its analysis focused on the Armed Career Criminal Act's (ACCA's) now-defunct residual clause. *See Johnson v. United States*, 576 U.S. 591 (2015) (holding residual clause unconstitutionally vague). The Court thus "decline[d] the Government's invitation to treat *Ball* as informative as to Mr. Payo's case." App. 18.

The Court nonetheless proceeded to analyze subsection (iv) under the enumerated-offenses clause, and concluded that it categorically matched the generic definition of robbery. Payo contends that by failing to argue that subsection (iv) satisfied the enumerated-offenses clause before sentencing, the Government forfeited that argument. And by not only excusing that forfeiture but also raising and adopting a legal argument that the Government never advanced to apply a sentencing enhancement, the District Court violated party-presentation and separation-of-powers principles. We agree.

In *Dowdell*, we reasoned that if the district court had "intervened … by excusing the Government's forfeiture and applying [its] own … legal theory, it would have undermined the judiciary's neutrality and encroached upon the executive branch's prosecutorial prerogative to argue its case." 70 F.4th at 146. Yet the District Court here did just that. It mined our

12

cases for a generic definition of robbery that the Government did not provide and concluded that subsection (iv) was a categorical match based on arguments the Government never made.

Despite its insistence to the contrary, the Government's unelaborated citation to *Ball* was no enumerated-offenses argument. It cited that case only for the broad proposition that subsection (iv) was a crime of violence. It did not even mention the enumerated-offenses clause, let alone explain why subsection (iv) qualifies under it. "[S]imply citing a case in the District Court is not sufficient to raise all arguments that might flow from it." *United States v. Dupree*, 617 F.3d 724, 731 (3d Cir. 2010) (Hardiman, J.).

Our concurring colleague claims that the "record shows that *Dowdell* does not apply" here because the "Government argued that Payo had been 'convicted of two crimes'"—including § 3701(a)(1)(iv)—"that categorically include the use of force or the threatened use of force." Conc. Op. 4 (quoting App. 177). But this language, which comes from the Government's cover memorandum for its *Shepard* documents, shows only that it had argued subsection (iv) was a crime of violence under the force clause. No one disputes that. This language does not show that the Government argued that subsection (iv) was a crime of violence under the *enumerated-offenses* clause.

Our colleague also claims that the Government's generic citation to *Ball* was enough to raise an enumerated-offenses clause argument because that case also discussed generic robbery and the District Court "took … 'the opportunity to consider the argument.'" Conc. Op. 5 n.1. He believes that *Dupree* is distinguishable because "[t]here, the [G]overnment cited a case to make one argument in the district court and a different argument on appeal." *Id.* (citing *Dupree*, 617 F.3d

13

at 730–31). That is an accurate statement of the procedural posture in *Dupree*, but it is unclear why this distinction matters. Unless the standard for preserving an issue for a district court's consideration is substantially different from the standard for preserving an issue for appeal, then an unexplained citation to a case, without more, is not enough to preserve all arguments that flow from it. *Dowdell* illustrates the point. The district court there held that the Government had forfeited a potentially winning argument, even though it had cited cases theoretically implicating that argument. We agreed that the Government had forfeited its argument before the district court. Not only did we quote *Dupree* for the proposition that case citations without elaboration cannot preserve arguments not explicitly made, *Dowdell*, 70 F.4th at 141, but we also held that the district court would have abused its discretion had it excused the Government's forfeiture and considered the argument anyway, *id.* at 145.

It is no answer to claim, as our colleague does, that the District Court ultimately reached the enumerated-offenses issue anyway. The question is not, as the concurrence frames it, whether the Government as *appellee* forfeited the argument before *us*; it is whether the Government as *prosecutor* forfeited the argument before the *District Court*. The issue we must decide is whether the District Court abused its discretion in imposing a sentencing enhancement by relying on an argument the Government did not make.

\*　　\*　　\*

Payo's 2010 conviction cannot support his sentencing enhancement because the Government forfeited the argument that § 3701(a)(1)(iv) is a crime of violence under the enumerated-offenses clause and concedes that it is not one under the

14

force clause. We next address whether his 2008 conviction can do the job.

### B. Was Payo's 2008 Conviction Under § 3701(a)(1)(i) or (ii)?

The District Court concluded that the 2008 conviction was under § 3701(a)(1)(ii), which all agree is a crime of violence, rather than § 3701(a)(1)(i), which might not be. It rested its conclusion on an online criminal docket sheet it found on its own. Payo argues that the District Court erred in doing so because the docket sheet is not only unreliable but also in tension with the *Shepard* documents the parties actually produced.

The Government claims that there is ample evidence for us to affirm the District Court's finding. First, it asserts that the Court could consider the docket sheet because it was a judicially noticeable *Shepard* document. Second, it contends that we may consider the plea colloquy from Payo's 2008 conviction—no doubt a *Shepard* document—which it offers for the first time on appeal. And third, it argues that we may consider Payo's presentence report. We address each argument in turn.

#### 1. The District Court Erred in Considering the State-Court Docket Sheet.

Payo claims that even if the District Court could independently look at materials that the Government never submitted, those materials should have been limited to *Shepard* documents, and the state-court docket sheet was not one. The Government makes two counterarguments. First, it responds that the District Court could look beyond *Shepard* documents to determine the subsection under which Payo was convicted because determining the bare fact of a conviction is analytically different from determining the nature of that conviction. In its

15

view, the modified categorical approach is concerned only with the latter, so *Shepard*'s restrictions do not limit the District Court in the way Payo claims. Second, the Government's fallback is that even if the District Court's analysis were so constrained, the docket sheet is reliable enough to qualify as a *Shepard* document. Neither argument is persuasive. Payo is correct that the District Court's inquiry was limited to *Shepard* documents and that the docket sheet is not such a document.

### a. Courts conducting a modified categorical analysis are confined to *Shepard* documents.

Our precedent lays out a three-step framework for determining whether to apply a career-offender enhancement. First, we ask if the relevant statute is divisible. *United States v. Ramos*, 892 F.3d 599, 607 (3d Cir. 2018). Second, if it is, we ask whether "the limited set of extra-statutory materials that we may consult under the modified categorical approach estab-lish[es] with certainty which subsection" of the divisible stat-ute "provided the basis for [the] conviction." *Id.* And third, if it does, we ask whether that specific offense "categorically qualif[ies] as a predicate crime of violence under the Guide-lines." *Id.*

Payo acknowledges that § 3701(a)(1) is divisible. *United States v. Peppers*, 899 F.3d 211, 232 (3d Cir. 2018); Ap-pellant's Br. 31 (noting that the question "posed here" is "which subsection of a divisible statute [Payo's] prior convic-tion rested" on). He contends that the District Court could thus look to only a "limited set of extra-statutory materials" to de-termine "which subsection … provided the basis for [his] con-viction." *Ramos*, 892 F.3d at 607; *see also* Appellant's Br. 28–29. In his view, the docket sheet is not sufficiently reli-able to qualify as a *Shepard* document, and so the District Court erred by relying on it.

16

The Government responds that the District Court could rely on the docket sheet, even if it were not a *Shepard* document, because there is "an analytical distinction between records used to determine the bare factual question of a defendant's prior conviction" and "the legal question of what elements comprise the offense of conviction." Appellee's Br. 25. According to the Government, determining which subsection of § 3701(a)(1) Payo was convicted under involves the former question, so "*Shepard*'s strictures do not fully apply." Appellee's Br. 25–26. The Government acknowledges that we have not expressly recognized this distinction. So it instead directs us to the Fourth Circuit's decision in *United States v. Washington*, which distinguished between two questions: "what records may the [G]overnment use in determining [a defendant's] offense of conviction, and what records may the [G]overnment use in determining whether the nature of that conviction qualifies it as an ACCA predicate." *United States v. Washington*, 629 F.3d 403, 412 (4th Cir. 2011).

The Government is correct that these inquiries can be analytically distinct, but whether they are depends on the object of the modified categorical approach. For example, in *Washington* the defendant was convicted under a Maryland statute that made it illegal "[t]o manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate … an intent to manufacture, distribute, or dispense, a controlled dangerous substance." *Id.* at 407–08 (quoting Md. Code. Ann. art. 27 § 286(a)(1)). Whether a sentence enhancement under ACCA applied did not turn on whether he was convicted under that statute; it turned on which drug was involved in the offense. So the sentencing court was not limited to *Shepard* documents in conducting the former inquiry, but it was in conducting the latter.

17

Here, determining whether Payo was convicted under § 3701(a)(1)(ii) is not, as in *Washington*, logically prior to the modified categorical analysis; it is itself the object of the analysis. Recall that once we determine the statute is divisible, "we apply the 'modified categorical approach' … *to identify the subsection under which [the defendant] was convicted.*" *Henderson*, 80 F.4th at 212 (emphasis added). The Government's argument would have us consider non-*Shepard* documents to determine which subsection of a divisible statute a defendant was convicted under, even when we are purporting to use the modified categorical approach to answer precisely that question. That does not make sense. If we acknowledge that we are "apply[ing] the 'modified categorical approach' … to identify the subsection under which" Payo was convicted, then we cannot say, as the Government asserts, that we are also allowed to consider non-*Shepard* materials to make this same determination. *Id.* If we could, the modified categorical approach, and thus our cases applying it to § 3701(a)(1), would contribute nothing.

When a district court is conducting the modified categorical approach, rather than some predicate sentencing fact-finding as in *Washington*, "the 'judicially noticeable documents' that are appropriate for consideration are materials such as the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented'"—in other words, *Shepard* documents. *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1192 (9th Cir. 2011) (quoting *Shepard*, 544 U.S. at 16). Allowing the Government—or the District Court on its own initiative—to rely on non-*Shepard* materials to determine the elements that supported a defendant's conviction would welcome the very "evil [the Supreme Court] sought to

18

prevent—inquiries into the underlying facts that would essentially turn the sentencing hearings into mini-trials." *Id.*

### b. The state-court docket sheet is not a Shepard document.

If the District Court was properly confined to *Shepard* documents in determining whether Payo was convicted under § 3701(a)(1)(ii), and it relied on a docket sheet in reaching that conclusion, then we must next determine whether that docket sheet is a *Shepard* document. What documents a sentencing court "may rely on to determine the nature of a prior conviction" is a "question[] of law, which we review de novo." *United States v. Howard*, 599 F.3d 269, 271 (3d Cir. 2010) (citations omitted).

Payo argues that the docket sheet here is not sufficiently reliable to qualify as part of the "specific set of extra-statutory documents" the sentencing court may use in conducting the modified categorical analysis. *Ramos*, 892 F.3d at 607. He contends that "[c]omputerized docket sheets obtained from an online repository of data that is inputted by unknown individuals from various agencies at unknown times are not conclusive records made or used in adjudicating guilt." Appellant's Br. 29. He also notes that "each page of the computerized docket sheets" that the District Court relied on contained the following disclaimer:

> Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can

19

only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa. C.S. Section 9183.

Appellant's Br. 30 (quoting App. 26–33).

*Shepard* documents are more limited than those documents the Government can introduce to prove other sentencing facts, like the fact of a prior conviction. "The Supreme Court has repeatedly stressed that there is a 'demand for certainty' in determining whether a defendant was convicted of a qualifying offense." *Gandy*, 917 F.3d at 1340 (quoting *Mathis*, 579 U.S. at 519). That demand for certainty limits us to documents that have the "conclusive significance of a prior judicial record." *Shepard*, 544 U.S. at 25. Those documents must "speak plainly" in establishing the elements of the underlying offense. *Mathis*, 579 U.S. at 519.

Several other circuits have categorically held that docket sheets are not *Shepard* documents. *See, e.g.*, *United States v. Leaverton*, 895 F.3d 1251, 1255 (10th Cir. 2018) (observing that "*Shepard* documents are limited to conclusive records made or used in adjudicating guilt"; "docket sheets fall far short of this standard" and "do not qualify as *Shepard* documents" (internal quotation marks omitted)). But we need not address whether a docket sheet can ever be a *Shepard* document because this one clearly is not. It was prepared not by the convicting court but by some other entity and then made available through the Unified Judicial System of Pennsylvania Web Portal. Each page of the docket sheet also prominently declares that "[n]either the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or

20

delayed data, errors or omissions on these reports." App. 26–33. The Government characterizes this warning as "boilerplate," aimed only at "protecting the courts from civil liability." Appellee's Br. 27. We are more inclined to read the warning to mean what it says: the docket sheet may be inaccurate. Because the docket sheet does not "approach[] the certainty of the record of conviction," it is not a *Shepard* document and the District Court erred by relying on it. *Shepard*, 544 U.S. at 23.

The Government resists this conclusion. It points to our decisions in *Howard* and *United States v. Henderson*, 841 F.3d 623 (3d Cir. 2016), which in its view held that docket sheets like this one are *Shepard* documents. But both cases are distinguishable. *Howard* involved neither the modified categorical approach nor *Shepard* documents. The defendant there argued that the Government could not prove the bare fact of a prior felony conviction with "an incomplete certified conviction record and [municipal court] Docket entries." *Howard*, 599 F.3d at 272. In the defendant's view, those documents lacked "sufficient indicia of reliability to support [their] probable accuracy," *id.* at 271 (quoting *United States v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993))—the ordinary reliability standard for considering information at sentencing, *see United States v. Freeman*, 763 F.3d 322, 337 (3d Cir. 2014) (discussing indicia-of-reliability standard). We disagreed that the docket sheet failed to clear that lower reliability threshold. We held that the sentencing court could rely on uncertified docket entries to apply the career-offender enhancement because those "docket entries [we]re the type of judicial records that are permissible for sentencing courts to use to establish past convictions for sentencing purposes." *Howard*, 599 F.3d at 273. In other words, the Government in *Howard* was trying to establish a more garden-variety sentencing fact—the kind the Fourth Circuit in

21

*Washington* held was not subject to *Shepard*'s heightened reliability requirement. *See supra* at 17–18. *Howard* thus stands merely for the proposition that a state-court docket entry is reliable enough to prove the fact of a prior felony conviction. Although it cites *Shepard*, it is not a *Shepard* case.

*Henderson* is off point too. That case, unlike *Howard*, did involve a modified categorical analysis, but not a docket sheet. The document at issue there was a form "completed by the Clerk of Courts in the Court of Common Pleas for Allegheny Pennsylvania" and "used for reporting … violations of the Controlled Substance, Drug, Device and Cosmetic Act." *Henderson*, 841 F.3d at 632 n.10. *Henderson* cited *Howard* for the proposition that "we have deemed 'other reliable judicial records' to be sufficient, including incomplete certified conviction records and docket entries because we have found that 'both … are records of the convicting court.'" *Id.* at 632 (quoting *Howard*, 599 F.3d at 272–73) (internal citation omitted) (omission in original). But as explained, we did not hold that state-court docket sheets were *Shepard* documents in *Howard*. The point in *Henderson* was only that the modified categorical approach is not limited to "'[a]ctual' conviction documents"; it can include other sufficiently reliable "records of the convicting court." *Id.*

### 2. We Cannot Consider *Shepard* Documents Introduced on Appeal.

The Government next argues that it can establish Payo's 2008 conviction was for violating § 3701(a)(1)(ii) even without the state-court docket sheet. "To eliminate any doubt," it "has now obtained the plea-colloquy transcript, which further confirms that subsection (ii) is 'the only logical choice' for [the] statute of conviction." Appellee's Br. 18. According to the Government, the plea colloquy shows that Payo "threatened

22

each victim by pulling back a piece of clothing to show what appeared to be a gun tucked into his waistband." *Id.* at 19. On its reading, "[t]here was no factual basis presented for Payo to admit to causing serious bodily injury," which is an element of § 3701(a)(1)(i). *Id.* The Government insists that it "has obtained this transcript on appeal not to sandbag, but in a good-faith effort to assure itself and the Court of the accuracy of the underlying convictions." *Id.* at 20. It cites our unpublished decision in *United States v. Volek* for the principle that "we are able to take judicial notice of the *Shepard* documents submitted by the [G]overnment for the first time on appeal." 796 F. App'x 123, 126 (3d Cir. 2019).

It is hard to harmonize *Volek* with our earlier published decisions holding that the Government ordinarily must defend a sentencing enhancement using the record it produced before the sentencing court. In *United States v. Dickler*, we held that when "the [G]overnment has the burden of production and persuasion as it does on issues like enhancement of the offense level under [the Guidelines], … its case should ordinarily have to stand or fall on the record it makes the first time around." 64 F.3d 818, 832 (3d Cir. 1995). "It should not normally be afforded 'a second bite at the apple.'" *Id.* (internal citation omitted). To be sure, we noted that there is "no constitutional or statutory impediment to the district court's providing the [G]overnment with an additional opportunity to present evidence on remand." *Id.* But it may do so only "if [the Government] has tendered a persuasive reason why fairness so requires." *Id.* In *United States v. Rowe*, we reiterated "our distaste for 'a second bite at the apple.'" 919 F.3d 752, 763 (3d Cir. 2019) (internal citation omitted). We acknowledged that *Dickler* "recognized a limited exception," but held that the Government did not provide a good reason for its failure, so we vacated the sentence, remanded the case for resentencing, and

specified that "the Government may not introduce new evidence to prove drug quantity." *Id.*; *see also In re Indian Palms Assocs.*, 61 F.3d 197, 205 (3d Cir. 1995) ("Judicial notice may be taken at any stage of the proceeding, including on appeal, *as long as it is not unfair to a party to do so ….*" (emphasis added) (quotation marks and citations omitted)).

We will not permit the Government here to introduce new *Shepard* documents on appeal. It bore the burden at sentencing of proving that the career-offender enhancement applied to Payo. *Napolitan*, 762 F.3d at 309. That burden included showing that he committed two predicate offenses. To prove that his 2008 conviction was a crime of violence, and thus a predicate offense, the Government introduced some *Shepard* documents, but it repeatedly chose not to produce the plea colloquy. Although *Volek* states that we can review *Shepard* documents introduced on appeal, we believe that decision clashes with our general rule—reaffirmed several times in our published opinions—that the Government must, absent a persuasive reason, defend its sentencing enhancements based on the record it created before the District Court. *See, e.g.*, *Rowe*, 919 F.3d at 763; *Dickler*, 64 F.3d at 832.

### 3. Payo's Presentence Report Is Not a *Shepard* Document.

Leaving no stone unturned, the Government argues that the docket sheet and plea colloquy are "not the only bas[e]s for determining the subsection of conviction here." Appellee's Br. 16. In its view, "[t]he [presentence report] also supports the [D]istrict [C]ourt's finding that the convictions were under subsection (ii)" because "Payo's robberies involved no actual bodily injury, … only threats of serious bodily injury." *Id.* (citation omitted).

A presentence report "can be a *Shepard* document when the defendant does not object to a factual account of a crime therein." *United States v. Doe*, 810 F.3d 132, 147 (3d Cir. 2015). The Government acknowledges that Payo objected to the factual descriptions of his prior conviction in the presentence report, but insists that those were "boilerplate blanket objections." Appellee's Br. 16. Such objections are purportedly "ineffective to nullify the [presentence report's] findings." *Id.* According to the Government, Payo's objection would be effective only if he "include[d] evidence to cast 'real doubt' on the [presentence report's] reliability." *Id.* at 17 (quoting *United States v. Meherg*, 714 F.3d 457, 459 (7th Cir. 2013)). "[O]bjections to the [presentence report that] are merely rhetorical and unsupported by countervailing proof" are not enough. *Id.* (quoting *United States v. Cyr*, 337 F.3d 96, 100 (1st Cir. 2003)).

The Government is conflating different ways a presentence report might be used. It is correct that a court ordinarily may consider a presentence report in determining sentencing facts. For example, the First Circuit in *Cyr* held that the district court had not erred by using the presentence report to establish drug quantity for sentencing purposes. 337 F.3d at 101. The defendant could not stop the court from considering a presentence report to establish sentencing facts merely by registering a blanket objection.

As we have explained, however, establishing ordinary sentencing facts is different from determining which of several alternative elements in a divisible statute supported a defendant's conviction. Under the modified categorical approach, "the universe of records the [G]overnment may use in proving the nature of a prior conviction" is limited to *Shepard* documents. *Washington*, 629 F.3d at 409. Those must have the "conclusive significance of a prior judicial record." *Shepard*, 544

25

U.S. at 25. A presentence report is not ordinarily a *Shepard* document because it is often itself based on non-*Shepard* documents, like police reports. *See United States v. Serrano-Mercado*, 784 F.3d 838, 858 (1st Cir. 2015) (Lipez, J., concurring) ("[P]olice reports are a typical source of the facts reported in a [presentence report] ...."); *see also Shepard*, 544 U.S. at 16 (holding courts may not rely on police reports when conducting a modified categorical analysis).

In *Doe*, we held that a presentence report may qualify as a *Shepard* document if, but only if, the defendant registered no objection to its contents. 810 F.3d at 147. The logic underlying that rule is that a presentence report has conclusive significance when the defendant accepts that its factual contents are accurate. But when a defendant does not concede that the factual contents of the presentence report are accurate, then that assumption no longer holds. The Government's argument that a defendant must make an effective objection with evidence that casts doubt on the presentence report is right for ordinary sentencing facts, but gets it backwards for the modified categorical analysis. The default presumption is that a presentence report is *not* a *Shepard* document. A contrary rule would allow the Government to smuggle information based on non-*Shepard* materials into the modified categorical analysis, and leave the defendant with the evidentiary burden of disproving the Government's claims. Because Payo objected to the factual content of the presentence report, it is not a *Shepard* document, and the District Court was right not to rely on it.

## IV.   WHAT IS THE APPROPRIATE REMEDY?

### A.   The District Court Shall Determine Whether Payo's 2008 Conviction Was Under § 3701(a)(1)(i) or (ii).

We need not reach Payo's third and final argument that subsections (i) and (iv) do not categorically match the generic offense of robbery because he succeeds on his first two arguments. To recap: the District Court should not have concluded that Payo's 2010 conviction under § 3701(a)(1)(iv) satisfied the enumerated-offenses clause. The Government never made that argument before the District Court, and, in failing to do so, forfeited it. By excusing the Government's forfeiture without explanation and advancing a legal argument the Government did not make, the Court violated party-presentation and separation-of-powers principles.

That leaves Payo's 2008 conviction. The District Court concluded, relying on a state-court docket sheet, that the conviction was under § 3701(a)(1)(ii), which is a crime of violence under the force clause—the argument the Government made all along. But as we explained, that docket sheet was not a *Shepard* document. The District Court should not have relied on it. And we cannot, as the Government requests, affirm the District Court's conclusion by looking at the 2008 plea colloquy, which is untimely, or the presentence report, which is not a *Shepard* document because of Payo's objection.

The sole remaining question is factual: Based on the *Shepard* documents the Government submitted to the District Court, was Payo's 2008 conviction under subsection (i) or (ii)? If subsection (ii), then the enhancement stands because the parties do not dispute that it satisfies the force clause. If subsection (i), then the enhancement was improper, at least here. That

27

is because on appeal the Government concedes that subsection (i) cannot satisfy the force clause. And it already forfeited in the District Court the argument that subsection (i) satisfies the enumerated-offenses clause.[1]

Because this residual question is essentially factual, we will remand to the District Court, in deference to its superior familiarity with the details of this case, to conduct the inquiry a second time. It should, however, confine its review to the *Shepard* documents the Government compiled the first time around. Because the Government did not provide a good reason for its failure to submit the docket sheet or plea colloquy at sentencing, we will not afford it "a second bite at the apple." *Dickler*, 64 F.3d at 832 (citation omitted).

If the District Court concludes that the remaining materials are inconclusive, then it must assume that the 2008 conviction was based on "the least culpable conduct hypothetically necessary to sustain a conviction under the statute." *United States v. Harris*, 68 F.4th 140, 145 (3d Cir. 2023) (citation omitted). Here, that would be § 3701(a)(1)(i). As the Government concedes, a defendant can violate subsection (i) with a mens rea of recklessness. By contrast, § 3701(a)(1)(ii) requires a more culpable mens rea: the defendant must "threaten[]

---

[1] Our concurring colleague again claims that the Government preserved this argument by claiming that its *Shepard* documents "'reveal[ed] … Payo was convicted of two counts of 18 Pa. C.S. [§] 3701(a)(1)(i) or (ii)' and 'submit[ted] that either of these convictions would qualify as a crime of violence.'" Conc. Op. 3 (quoting App. 176). No one disputes that the Government argued subsection (i) was a crime of violence. The problem is that it never argued subsection (i) satisfied the enumerated-offenses clause.

another with or intentionally put[] him in fear of immediate serious bodily injury." 18 Pa. Cons. Stat. § 3701(a)(1)(ii).

Finally, we request that the District Court act expeditiously on remand to ensure it resolves Payo's career-offender status before he completes his sentence. Nearly six years elapsed between when Payo was sentenced and when we heard argument, and at the time of our writing his projected release date is November 17, 2026.

## B. The District Court May Consider Payo's Personal History.

On remand, if the District Court ultimately determines that Payo is not a career offender, he may be eligible for release immediately upon resentencing. In that event, the District Court will have to determine what, if any, conditions to include in any term of supervised release it might impose. In fashioning the appropriate conditions of that release, the Court might consider how Payo's criminality is rooted in his lifelong struggles with mental illness, drug addiction, and chronic pain.

For most of his life, Payo has experienced chronic back pain, drug addiction, and severe mental health issues. He has been diagnosed with anxiety disorder, bipolar depression, post-traumatic stress disorder, and schizoaffective disorder. He has a history of suicidal ideation and has several times received inpatient mental health treatment.

In 2017, Payo committed the robberies that supported the conviction before us now. A year earlier, he underwent spinal fusion surgery and was committed twice to inpatient mental health treatment. Unable to manage his pain, he told an emergency room nurse that he "want[ed] to die" and planned to "jump from the fourth floor building or use a razor blade to slit his throat." App. 113 (internal quotation marks omitted). These

29

pain and mental-health struggles helped fuel Payo's addiction as he resorted to drugs to self-medicate. And after he was arrested for the 2017 robberies, Payo told the interviewing officer, "I planned on having you guys shoot me." App. 115 (internal quotation marks omitted).

These misfortunes do not excuse Payo's conduct. But they do provide context. If he is ever to reenter society successfully and remain crime-free, then he must address his mental-health and drug-use struggles. To that end, the District Court may want to consider including conditions of release targeting the underlying causes of Payo's significant history of criminality.[2]

---

[2] We also note that Payo is 60 years old. He was 53 years old when he was sentenced. The United States Sentencing Commission has published research suggesting an inverse relationship between age and criminality. *See* U.S. Sent'g Comm'n, *Older Offenders in the Federal System* 41–44 (July 2022); U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 22 (Dec. 2017). Older offenders are less likely to recidivate and, when they do, are much more likely to commit less serious offenses then their younger counterparts. *See Older Offenders in the Federal System* 41–44; *The Effects of Aging* 22. Payo's age alone greatly reduces the risk he presents to society if he were to be released. During an eight-year follow-up period of all individuals released in 2010 from federal custody, "[t]he recidivism rate of older offenders (21.3%) was less than half that of offenders under the age of 50 (53.4%)." *Older Offenders in the Federal System* 42–43. And during an eight-year follow-up period of all individuals released in 2005 from federal custody, the recidivism rate for individuals released at age 60 years or older was 16.4%; it was

30

# V. CONCLUSION

The parties, not the courts, are "responsible for advancing the facts and arguments entitling them to relief" in our criminal legal system. *Dowdell*, 70 F.4th at 141 (quoting *Greenlaw*, 554 U.S. at 244). In a laudable effort to reach the right answer, the District Court failed to hold the Government to the arguments and factual record it chose to develop. Instead, it resuscitated the Government's forfeited argument that the 2010 conviction was a crime of violence under the enumerated-offenses clause and purported to take judicial notice of a non-*Shepard* document. We disagree with those decisions.

The only remaining live issue is whether Payo's 2008 conviction was under § 3701(a)(1)(i) or (ii). We thus vacate Payo's sentence and remand for the District Court to answer that question as expeditiously as possible using only the *Shepard* documents produced by the Government the first time around. If it can prove that Payo's 2008 conviction was under subsection (ii), the sentence enhancement stands; otherwise, it does not.

---

64.8% for those who were released at an age younger than 30 years old. *The Effects of Aging* 2–3, 22.

HARDIMAN, *Circuit Judge*, concurring in the judgment.

I agree with my colleagues that we must vacate David Payo's sentence and remand for the District Court to resentence him. The resentencing hearing should be de novo.

This appeal comes to us in an unusual procedural posture. Payo was sentenced on March 7, 2019. The parties disputed whether he was a "career offender" within the meaning of U.S.S.G. § 4B1.1. To answer that question, the parties focused mostly on whether Payo's two-count conviction for Pennsylvania robbery in violation of 18 Pa. Cons. Stat. § 3701(a)(1)(i) or (ii) involved the use of force.

After Payo was sentenced, his appeal was stayed for over four years pending the resolution of other cases involving categorical approach issues. The law changed during that time. First, the Supreme Court held that a criminal offense that requires only a mens rea of recklessness does not satisfy the elements clause in the Armed Career Criminal Act's definition of "violent felony." *See Borden v. United States*, 593 U.S. 420, 423 (2021) (plurality opinion). Second, we determined that 18 Pa. Cons. Stat. § 3701(a)(1)(ii) qualifies as a "crime of violence" under U.S.S.G. § 4B1.2(a)'s elements clause. *See United States v. Henderson*, 80 F.4th 207, 215 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 1379 (2024).

The decisions just mentioned caused the parties to shift their focus on appeal. In the District Court, the Government had argued that Payo pleaded guilty to violating § 3701(a)(1)(i) or (ii) and that both subsections qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a)'s elements clause. Meanwhile, Payo had contended that it was unclear whether he pleaded guilty to violating § 3701(a)(1)(i) or (ii), and he had

1

tactically argued that under *Shepard* the District Court could not consider a state court sentencing order that indicated he had pleaded guilty to violating § 3701(a)(1)(i). The Government now concedes that § 3701(a)(1)(i) cannot qualify as a crime of violence under U.S.S.G. § 4B1.2(a)'s elements clause because it requires only a mens rea of recklessness. So the Government argues that the *Shepard* documents show Payo pleaded guilty to violating § 3701(a)(1)(ii) and that § 3701(a)(1)(i) is an enumerated offense. For his part, Payo now argues that the *Shepard* documents show he pleaded guilty to violating § 3701(a)(1)(i), which he contends is not an enumerated offense.

In view of these legal and tactical changes, the District Court deserves the opportunity to resentence Payo without constraint, subject to the now-controlling precedents. The majority requires the opposite, severely circumscribing the District Court's ability to get this case correct based on the facts and the law. In my view, the majority makes three fundamental errors.

*First*, the majority holds that the District Court erred by relying on the docket face sheet because it was not a *Shepard* document. I agree that the District Court erred by relying exclusively on the docket face sheet in view of the apparent conflict between the docket face sheet and the sentencing order. So I would remand for the District Court to reexamine the docket face sheet, the state court sentencing order, and any other appropriate *Shepard* documents to determine whether Payo was convicted under 18 Pa. Cons. Stat. § 3701(a)(1)(i) or (ii).

*Second*, the majority holds that the Government forfeited the argument that § 3701(a)(1)(i) satisfies the

2

enumerated offenses clause. In doing so, the majority turns forfeiture on its head by invoking the doctrine against the appellee in this procedural posture. But as we have explained, "forfeiture has greater consequences for appellants than for appellees." *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 646 (3d Cir. 2024). The Government was "not required to raise all possible alternative grounds for affirmance to avoid [forfeiting] those grounds." *Eichorn v. AT&T Corp.*, 484 F.3d 644, 657–58 (3d Cir. 2007). And "[w]e may affirm a district court for any reason supported by the record." *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011). So the Government may defend the judgment below on a new ground. *See, e.g.*, *Los Rovell Dahda v. United States*, 584 U.S. 440, 449–50 (2018) (affirming based on "an argument that the Government did not make below" that was "closely related to the arguments the Government did make below"). Considering alternative grounds for affirmance is especially appropriate where, as here, there has been a significant intervening change in the law. *See Borden*, 593 U.S. at 423; *see also United States v. Quailes*, 126 F.4th 215, 218 n.4 (3d Cir. 2025) ("[W]e may reach forfeited arguments that relate to an intervening change in controlling case law that occurs while appeal is pending.").

The Government also raised this issue in the District Court, so it is especially mistaken to preclude it from renewing this argument on remand. When it submitted the *Shepard* documents, the Government argued that they "reveal[ed] . . . Payo was convicted of two counts of 18 Pa. C.S. 3701(a)(1)(i) or (ii)" and "submit[ted] that either of these convictions would qualify as a crime of violence." App. 176. Because the Government raised this issue, I would allow the District Court to consider it on remand and would not restrict the sources it

3

may consider in determining whether Payo's conviction was for § 3701(a)(1)(i) or (ii).

*Third*, the majority holds that because the Government forfeited its argument that 18 Pa. Cons. Stat. § 3701(a)(1)(iv) is a crime of violence under U.S.S.G. § 4B1.2(a)'s enumerated offenses clause, the District Court abused its discretion by accepting it. Citing dicta in *United States v. Dowdell*, 70 F.4th 134 (3d Cir. 2023), the majority concludes that the District Court "violated party-presentation and separation-of-powers principles" by reaching a forfeited argument. Maj. Op. Section III-A-3. Once again, the majority flips forfeiture on its head by invoking the doctrine against the appellee *on an argument that the District Court actually reached*.

The District Court record shows that *Dowdell* does not apply to this case. The Government argued that Payo had been "convicted of two crimes that categorically include the use of force or the threatened use of force." App. 177. Those two crimes included 18 Pa. Cons. Stat. § 3701(a)(1)(i) or (ii) and *id*. § 3701(a)(1)(iv). App. 176. As for the latter, the Government said only that "[t]he First Circuit has held that 18 Pa. C.S. 3701(a)(1)(iv) is a crime of violence." *Id*. (citing *United States v. Ball*, 870 F.3d 1, 6 (1st Cir. 2017)). But in an opinion following that written submission, the District Court recognized that *Ball* discussed whether § 3701(a)(1)(iv) substantially corresponds with generic robbery. *United States v. Payo*, 2019 WL 235112, at *4 (W.D. Pa. Jan. 16, 2019).

In sum, the Government's sparse filing apprised the District Court of its argument.[1] Although the District Court

---

[1] The majority also says that "simply citing a case in the District Court is not sufficient to raise all arguments that might

4

could have required the Government to further develop its argument, its decision not to do so was far from an abuse of discretion. *See Dowdell*, 70 F.4th at 140–42. And its conclusion that § 3701(a)(1)(iv) was an enumerated offense is a required judicial function, not a violation of the separation of powers.

The idiosyncrasies of this case require a full and fair hearing in the District Court so the sentencing judge can ascertain, once and for all, whether Payo is a career offender. With respect, I concur only in the judgment.

---

flow from it." Maj. Op. Section III-A-3 (quoting *United States v. Dupree*, 617 F.3d 724, 731 (3d Cir. 2010)) (cleaned up). That language from *Dupree* is taken out of context. There, the government cited a case to make one argument in the district court and a different argument on appeal. *Dupree*, 617 F.3d at 730–31. We held the argument first raised on appeal was forfeited because the district court was not given "the opportunity to consider" it. *Id.* at 731. Here, by contrast, the District Court had—and took—"the opportunity to consider the argument" when the Government cited *Ball*. *Id.*; *Payo*, 2019 WL 235112, at *4–6.